UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
JOHN HAMMOND,

        Petitioner,

    v.

JAMES CONWAY,
SUPERINTENDENT

        Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM
  AND ORDER
07 CV 1042 (JG)

A P P E A R A N C E S:

    JOHN HAMMOND
        Reg. No. 00A1902
        Attica Correctional Facility
        P.O. Box 149
        Attica, NY 14011-0149
        Petitioner *Pro Se*

    CHARLES J. HYNES
        Kings County District Attorney
        350 Jay Street
        Brooklyn, New York 11201
    By:    DIANE R. EISNER
        Assistant District Attorney
        Attorneys for Respondent

JOHN GLEESON, United States District Judge:

        John Hammond petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 citing the fact that as of March 5, 2007, the date the instant petition was filed, four successive appellate attorneys had failed to perfect Hammond's direct appeal of his December 13, 1999 convictions for burglary and petit larceny. For the reasons discussed below, it appears at least likely (if not certain) that the delay in Hammond's appeal amounted to a due process violation. However, because Hammond has stated that he does not want the only relief available to him on

such a finding -- an order setting a timetable for the decision of his direct appeal by the state court -- the petition is dismissed without prejudice to renewal should Hammond seek such relief at a later date.

## BACKGROUND

A.  The Facts

On November 26, 1998, the police arrested Hammond in connection with the robbery of money, jewelry, clothing, and electronics equipment from an apartment in Brooklyn. Hammond was found guilty by a jury of two counts of burglary in the second degree and two counts of petit larceny. He was sentenced on March 14, 2000 as a persistent violent felony offender to 22 years to life in prison. On March 20, 2000, Hammond filed a notice of appeal, and he subsequently moved for appointment of counsel for the purposes of that appeal. The Supreme Court of the State of New York, Appellate Division, Second Department, appointed the Legal Aid Society as counsel for Hammond on May 16, 2000.

On November 13, 2000, the Appellate Division sent a "180 Day Assignment Status Letter" to the Legal Aid Society. It responded that certain minutes were missing from the trial record, and that it would assign the case to a staff attorney when the record was complete. On March 5, 2001, the Legal Aid Society indicated that it was still missing records from a *Sandoval* hearing, and that it had recently requested those records.

On March 29, 2002, the Legal Aid Society moved to be relieved, citing Hammond's potential claim that an invalid guilty plea led to a conviction that formed part of the basis for his persistent violent felony offender enhancement. This issue would pose a conflict, the Legal Aid Society argued, because it had represented Hammond in the case resulting in the

2

earlier conviction, and it had not raised the issue during those proceedings. Hammond also sought reassignment of counsel, albeit for a different reason; he complained that the Legal Aid Society had not provided him with the grand jury minutes he had requested. On August 15, 2002, the Appellate Division granted the Legal Aid Society's motion to be relieved, and appointed Patrick Hayes as replacement counsel. *People v. Hammond*, No. 11926/98 (2d Dep't August 15, 2002) (decision and order on Legal Aid Society's motion to be relieved). The court directed the Legal Aid Society to turn over all papers in the case to Hayes.

Shortly after the re-assignment, Hayes filed a motion to be relieved due to a heavy caseload. The court granted that motion on November 1, 2002, and ordered Hayes to turn over all documents in the case to his successor as appellate counsel, Ethel Ross. *People v. Hammond*, No. 11926/98 (2d Dep't November 1, 2002) (decision and order on Hayes's motion to be relieved).

The case languished for three years after it was assigned to Ross. On May 5, 2003, the Appellate Division sent a "180 Day Assignment Status Letter" to her, to which she responded that she was still waiting to receive the transcript in Hammond's case, and that she was working on six appeals at that time. In response to the court's further inquires in August 2003, Ross indicated that she had three major appeals to perfect before she could begin work on Hammond's case. The court again inquired as to the status of the case in February 2004, and Ross reported that she was still burdened by five other appeals and had yet to receive the transcript in Hammond's case. *See* Ross Letter (March 18, 2004).

By motion dated August 10, 2004, accompanied by a letter dated July 29, 2004, Hammond requested that counsel be appointed to replace Ross. He also sought copies of court

3

transcripts. Hammond stated in the letter to the Appellate Division that it "has been two years since Ms. Ross's appointment by this Court, and it is only now as [of] 7/7/04 that she has requested of me my copy of the Transcripts to presumably, (from her recent letter) prosecute my direct appeal from the above said judgment." Resp. Ex. H at 5. Hammond also complained that Ross had not provided him with certain of the transcripts he requested, and that she had refused to pursue a motion pursuant to N.Y. Crim. Proc. Law § 440.10 to expand the record. Ross herself consented to Hammond's request for replacement counsel. *See* Ross Letter, September 25, 2004. The Appellate Division denied Hammond's motion and ordered Ross to prosecute the appeal expeditiously. *People v. Hammond*, No. 11926/98 (2d Dep't October 13, 2004) (decision and order on motion for assignment of new appellate counsel and for copies of trial transcripts). The court also mailed copies of the transcripts to Ross.

By letter dated December 19, 2004, Ross again informed the court that she would need to complete three other appeals before turning to Hammond's case. Ross sent a similar letter on March 29, 2005. On July 5, 2005, Ross reported that two of the three cases remained. On July 28, 2005, Hammond wrote Ross a letter inquiring as to the status of the appeal, and as to the possibility of raising a speedy appeal claim. *See* Pet. Ex O, Hammond Letter (July 28, 2005) ("Why have you not discussed the possibility of submitting a motion to have the conviction dismissed due to the delay of my right to direct appeal? . . . Please advise me of the law regarding appeal delays, Ms. Ross.").

On October 3, 2005, Ross returned the Hammond transcripts to the Appellate Division. On its own motion, the court relieved Ross as counsel on October 26, 2005 and ordered Ross to turn over all documents in the case to replacement counsel Stuart Birbach.

4

*People v. Hammond*, No. 11926/98 (2d Dep't October 26, 2005) (decision and order on Ross's motion to be relieved), *vacated and substituted by People v. Hammond*, No. 11926/98 (2d Dep't December 4, 2004) (clarifying that the substitution of Ross had been made on the court's own motion).[1]

Birbach was notified of his appointment by letter dated October 28, 2005, and he received the trial transcripts on or about November 4, 2005. On November 25, 2005, Ross sent Birbach the files for Hammond's case. On May 26, 2006, Birbach informed the court that he was copying the entire case file to be sent to Hammond upon Hammond's request, and that he hoped to complete the brief within 90 days.

On November 11, 2006, Hammond wrote to Chief Judge Judith Kaye of the New York Court of Appeals, complaining that Birbach had not responded to his expressed interest in filing an ineffective assistance of trial counsel claim pursuant to § 440.10 and a claim challenging his sentence pursuant to § 440.20. That letter was referred to the Clerk's office at the Appellate Division. Within days, an employee at the Clerk's office in the Appellate Division called and wrote a letter to Birbach inquiring as to the status of the brief. Birbach reported that the brief would be filed by the end of the year. The Clerk's office again contacted Birbach on December 4, 2006 to ask that Birbach expedite the appeal.

By letter dated December 22, 2006, the Clerk's office informed Hammond of its communications with Birbach, reporting that the brief would likely be filed close to the end of the year, and instructed Hammond that Birbach had been appointed solely to perfect his direct

---

[1] The order erroneously noted that Hammond's motion for leave to prosecute his appeal and to be appointed counsel for that purpose was granted on November 1, 2002, rather than the actual date of May 16, 2000. November 1, 2000, was the date Ross -- Hammond's third appellate counsel -- was appointed.

5

appeal and not to file a § 440 motion. Any § 440 motion that he wished to file could be submitted *pro se* or with the assistance of counsel appointed upon separate request to the court. That same day, the Appellate Division again contacted Birbach regarding the brief.

On January 2, 2007, Birbach mailed Hammond a copy of the draft brief on appeal. Hammond returned the draft with comments and suggested changes. Hammond also complained to the Appellate Division about the quality of the brief, to which the Appellate Division responded by letter dated January 16, 2007 that Hammond was free to seek leave to file a *pro se* supplemental brief after the brief prepared by counsel was filed.

On January 22, 2007, Birbach sent Hammond another draft of the brief, noting that it contained a new point of argument, the fourth in the brief. Hammond wrote back with suggested changes. Birbach responded that he had accepted certain of his changes, but had left other suggestions out of the brief. He suggested that Hammond file a supplemental brief that would include the other issues he wanted to raise. Hammond and Birbach continued to exchange similar letters throughout February, March, and April 2007.

On May 14, 2007, the District Attorney's office received the brief that Birbach filed in Hammond's direct appeal. The brief in opposition to the appeal was due in mid-July 2007.

B. The Instant Petition

Hammond now claims that the failure of his attorneys to file a brief on direct appeal deprived him of his due process right to a speedy appeal, and that it constituted ineffective assistance of appellate counsel. He seeks: "[a] new trial, or release from custody. That counsel be appointed to prosecute this petition and that the direct appeal be held in abeyance until this

petition is heard by this court." Petition 14. Respondent argues that Hammond has been partially responsible for the delay since he has continued to request revisions and additions, and because Hammond has not established that he sought a speedy appeal or that he has been prejudiced by the absence of one. For these reasons, Respondent asserts that the delay in Hammond's appeal has not violated Hammond's due process rights.

C.    The Oral Argument

During the June 12, 2007 oral argument of the petition, Hammond reported that his application for leave to file a *pro se* supplemental brief in his direct appeal is now pending before the Appellate Division. He also indicated his desire to fully litigate a § 440 motion, by which Hammond will seek expansion of the record, before the Appellate Division decides the direct appeal. Hammond specifically stated that he wants the Appellate Division to consider his § 440 motion prior to (or at least simultaneously with) his direct appeal, so that any expansion in the record that results from the § 440 motion may be in place for the purposes of the direct appeal.[2] Hammond does not want this Court to set a timetable for resolution by the state court of the direct appeal, because that could undermine his desire to have his § 440 motion (and its accompanying record) before the Appellate Division when the direct appeal is considered.

DISCUSSION

A.    The Governing Legal Principles

A federal court should not grant a writ of habeas corpus unless the petitioner has exhausted state court remedies. *See* § 2254(b)(1)(A). To meet this exhaustion requirement, a

---

[2]    By letter dated June 12, 2007, Hammond also requests that I appoint counsel to assist him in preparing his § 440 motion and to file a claim for damages on his behalf pursuant to 42 U.S.C. § 1983. Both requests are denied.

petitioner must have presented the state courts with "the same claim he urges upon the federal courts," *Picard v. Connor*, 404 U.S. 270, 276 (1971), as a way of giving the state court "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Id*. at 275 (internal citations omitted). However, a district court may deny a habeas petition on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." § 2254(b)(2).

In a speedy appeal claim, "[t]he doctrine of exhaustion of state remedies does not require a prisoner to wait six years . . . or even three or four years before enlisting federal aid to expedite an appeal." *Simmons v. Reynolds*, 898 F.2d 865, 870 (2d Cir. 1990). "[P]risoners need not wait indefinitely before they can bring their delay petitions to federal court." *Id.*

Other principles that attend federal habeas review of a state petitioner's conviction, such as the standard of review pursuant to The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, and the procedural default rules, are not applicable in this case, where there is no state court decision subject to review.

B. Hammond's Claim

"[I]t is now clear in this circuit that substantial delay in the state criminal appeal process is a sufficient ground to justify the exercise of federal habeas jurisdiction." *Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir. 1991). *See also Simmons*, 898 F.2d at 868 ("[W]e have acknowledged that the right to a reasonably timely appeal is included among the protections afforded by the due process clause when a state does provide for an appeal.").

In order to determine whether a delay of a defendant's appeal violates due process, courts look to the criteria set forth in *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972): (1)

8

the length of delay; (2) the cause of the delay; (3) whether the defendant has made efforts to assert his or her right to appeal; and (4) whether the delay has prejudiced the defendant. No one of the above factors is dispositive, and all should be considered together in light of the circumstances of each case. *Simmons*, 898 F.2d at 868. Furthermore, even where a direct appeal is decided against a defendant prior to a district court's decision on habeas review, that defendant is still entitled to a habeas determination of "whether his appeal was no more than a 'meaningless ritual'" . . . . *Id.* at 867 (quoting *Evitts v. Lucey*, 469 U.S. 387, 394 (1985)).

The first factor favors Hammond. The state has failed to provide an adequate excuse for the fact that it allowed Hammond's case to languish for three years with Ross, and for the fact that it took appellate counsel more than seven years to perfect Hammond's appeal.

The second *Barker* factor -- the cause of the delay -- also weighs in favor of Hammond. Though the state is not responsible for each of the delays in Hammond's appeal, its failure to remedy Ross's lack of attention to the case was the cause of a substantial period of delay.[3] In evaluating this factor, "negligence or overcrowded courts should be weighted less heavily [than deliberate delays] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531.

---

[3] The Appellate Division's periodic letters seeking updates from Ross notwithstanding, the state court failed to respond adequately to Ross's lack of activity in the case. In August 2004, when Hammond moved the Appellate Division to relieve Ross from the case, Ross had been responsible for the case for more than 20 months but had not yet received the trial record or done any work on the case. In consideration of those facts, and in light of the fact that the appeal was already substantially delayed, the only adequate response on the Appellate Division's part would have been to grant Hammond's request to remove Ross from the case. It was not until Ross herself returned the transcripts to the Appellate Division more than a year later that the court relieved Ross as counsel.

That three-year delay was exacerbated by the additional lapse of more than 18 months before Birbach filed the brief on appeal. Though the latter period did not, by itself, constitute an inordinate delay, under the circumstances of this case the Appellate Division should have established a firm (and shorter) deadline for Birbach's filing of the brief.

The third *Barker* factor, which considers the defendant's assertion of the speedy trial right, is essentially neutral in this case. Hammond's letters indicate that he was more interested in expanding the record, including via a § 440 motion, than in prosecuting a speedy appeal. However, Hammond did ground his 2004 request to the Appellate Division that Ross be replaced in part on the fact that she had waited two years to request the trial record. In any event, the notion that a defendant "who fails to demand a speedy trial forever waives his right" has been rejected. *Barker*, 407 U.S. at 528.

Finally, *Barker* instruct courts to consider whether a defendant has been prejudiced by a delay. Hammond has not asserted that his appeal is prejudiced in any way as a result of the delay, and I see no basis for such a contention. Though this factor weighs against Hammond, it is possible to find a due process violation as a result of a delayed appeal in the absence of prejudice to the defendant. *See Cody*, 936 F.2d at 719 ("Though assessment of the merits of [the defendant's] appeal was not significantly prejudiced, on balance the *Barker* factors weigh in his favor.").

In sum, the *Barker* factors balance in favor of Hammond's claim that his due process rights have been violated by the delay in his direct appeal. I need not decide the issue here, however, because Hammond does not want the relief such a holding would afford him, as discussed below. Moreover, since a finding of a due process violation could have collateral consequences, *see Cody*, 936 F.2d at 723 (denial of speedy appeal may support claim for damages pursuant to 42 U.S.C. § 1983), it seems inappropriate to decide the issue in the absence of a need to do so.

C.   The Appropriate Relief

Granting a habeas petition based upon an unconstitutional delay in an appeal does not require a district court to contemplate the "unpalatable alternatives" of unconditional release versus the denial of all relief. *Simmons*, 898 F.2d at 869. Courts may also choose a middle path. A conditional order "requiring a state court to hear the appeal within a specific period of time or release the prisoner" is an appropriate remedy. *Id.* at 869. Such an order "grants a prisoner the required relief, his appeal; and it provides federal courts with an effective means to protect prisoners' rights to appeal." *Id.* at 869-70; *see also Cody*, 936 F.2d at 721 ("The conditional writ is designed to chart a middle course that is responsive to the legitimate due process claims of state prisoners who are victims of undue appellate delay without immediately invalidating a properly determined judgment of conviction."). Indeed, the conditional writ is "perhaps our only effective tool for assisting state prisoners whose appeals are unreasonably delayed." *Diaz v. Henderson*, 905 F.2d 652, 654 (2d Cir. 1990).

Only where the due process violation worked to "affect the constitutional integrity of the appeal itself," *Simmons*, 898 F.2d at 869, *i.e.*, where the delay prejudiced the appeal, is release from custody warranted. As noted above, Hammond has not demonstrated that his appeal has been prejudiced in any way by the delay in the filing of his appellate brief. Therefore, I do not grant Hammond's request for unconditional release. Nor do I find it appropriate to grant the other forms of relief that Hammond listed in his petition, including a new trial, counsel to represent him for the purposes of this petition, and a stay of his appeal pending the outcome of this petition. In short, an order setting a timetable for the direct appeal in state court would be the most appropriate remedy here.

However, during the June 12, 2007 oral argument of the petition, Hammond stated that he does not want me to set such a timetable. Instead, as described above, Hammond wants the Appellate Division to adjudicate his upcoming § 440 motion prior to, or at least simultaneously with, his direct appeal. He feels that he will be prejudiced if the direct appeal is decided without the Appellate Division having the benefit of the expanded record that will accompany an appeal from his pending § 440 motion. Thus, he does not want an order from this Court to the Appellate Division directing it to expedite its decision of the direct appeal.

CONCLUSION

Because Hammond does not want the only relief to which he would be entitled, the petition is dismissed. The dismissal is without prejudice to renewal should Hammond later elect to seek the conditional relief described above.

So ordered.

John Gleeson, U.S.D.J.

Dated: August 31, 2007
      Brooklyn, New York